IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No.  08-cv-01866-PAB-MEH

FIRST FRANKLIN FINANCIAL CORPORATION,
a Delaware corporation,

      Plaintiff,

v.

UNITED TITLE COMPANY, INC.,
a Colorado corporation,

      Defendant.
_____

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT**
_____

      This matter comes before the Court on the motion for partial summary judgment

("Def.'s Mot.") [Docket No. 36] of defendant United Title Company, Inc. ("United Title"),

which was filed on July 17, 2009.  On August 6, 2009, plaintiff First Franklin Financial

Corporation ("First Franklin") responded.  Pl.'s Resp. [Docket No. 37].  United Title filed

a reply in support of its motion for partial summary judgment on August 21, 2009.

[Docket No. 38].  United Title's motion, therefore, is fully briefed and ripe for disposition.

**I. BACKGROUND**

      First Franklin engaged United Title to perform settlement and closing services in

connection with a mortgage and provided United Title with closing instructions for the

loan.  Def.'s Mot. at 2 ¶ 1-2; Pl.'s Resp. at 2.  The closing instructions required United

Title not to fund the loan if United Title had "knowledge or reason to suspect the

borrower has or intends to obtain secondary financing to purchase the subject property

except as permitted herein." Def.'s Mot. at 2 ¶ 4; Pl.'s Resp. at 2.  The instructions "also required any funds to close to be drawn on the deposit account of the [borrower's] loan application."  Def.'s Mot. at 2 ¶ 5; Pl.'s Resp. at 2.

First Franklin contends that United Title failed to follow these closing instructions. First Franklin raises five claims of relief in its complaint: (1) breach of the lender's closing instructions, Compl. [Docket No. 1] at 6-7; (2) negligence, *id.* at 7-8; (3) breach of fiduciary duty, *id.* at 8; (4) fraudulent concealment, *id.* at 8-9; and (5) civil conspiracy to commit fraudulent concealment, *id.* at 9-10.[1]  The breach of contract claim is based on First Franklin's allegation that United Title "breached its agreement to follow the Closing Instructions by disbursing the First Franklin funds despite its clear knowledge of secondary financing, and by permitting the closing funds to be drawn from a source other than the deposit account listed in the Rosses' loan application." *Id.* ¶ 27.  First Franklin claims this breach resulted in damages in the amount of $193,620.56.  *Id.* ¶ 28.  In its breach of fiduciary duty claim, First Franklin alleges that United Title "breached its fiduciary duty to First Franklin by funding the Loan despite clear knowledge of unauthorized secondary financing from Irwin Union Bank, and by drawing funds to close from the Irwin Union Bank loan rather than from the Rosses' deposit

---

[1]In support of all of its claims, First Franklin alleges that United Title funded the loan despite knowing the borrowers had obtained secondary funding.  According to the complaint, United Title obtained that knowledge because, "[u]nbeknownst to First Franklin, United Title was acting as the settlement and closing agent for the [borrowers'] second loan . . . as well."  Compl. [Docket No. 1] ¶ 16.  First Franklin avers that "[b]y violating First Franklin's Closing Instructions, United Title caused First Franklin to fund a very high risk loan" and "[h]ad United Title obeyed the clear Closing Instructions, the Loan would not have been funded, and First Franklin would not have suffered a loss." *Id.* ¶¶ 20, 22.

account." *Id.* ¶ 35.  First Franklin claims the identical damages amount flows from the alleged breach of fiduciary duty. *Id.* ¶ 36.

United Title seeks summary judgment on only the second claim for relief (negligence) and the third claim for relief (fiduciary duty), arguing that they are both barred by application of Colorado's economic loss rule.  In its response, plaintiff "does not contest United Title's argument as to negligence."  Pl.'s Resp. at 3.  Consequently, the only issue before this Court is whether United Title is entitled to summary judgment on First Franklin's third cause of action, breach of fiduciary duty.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

Here, the parties agree on the material facts.  The only question is whether, in light of those facts, Colorado's economic loss rule bars plaintiff's claim for breach of fiduciary duty.[2]

## III. ANALYSIS

United Title contends that the breach of fiduciary duty claim is barred by the economic loss rule because "First Franklin does not allege any independently arising duty, but rather bases its fiduciary duty claim on the same duties it alleges in its breach of closing instructions claim."  Def.'s Mot. at 8-9.  In advancing that argument, United Title asks this Court to find that a "title company acting as a settlement and closing agent in a real estate transaction is a limited agent for the parties to the transaction, with limited fiduciary duties defined by the escrow instructions."  *Id.* at 6.  In response, First Franklin argues that the economic loss rule does not apply to its breach of fiduciary duty claim because "a closing agent owes a duty to protect the rights of the

---

[2]The Court has diversity-based jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).  Therefore, the substantive law of the forum state governs the analysis of the underlying claims.  *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).  In the absence of any argument to the contrary, and in light of both parties' reliance on Colorado law, the Court applies the substantive law of Colorado to the matter at hand.

The Court approaches unanswered questions of state law as it believes the state Supreme Court would. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994) ("If a federal court cannot ascertain the law of the forum state, we must in essence sit as a state court and predict how the highest state court would rule.").  Furthermore, "[a]lthough we are not required to follow the dictates of an intermediate state appellate court, we may view such a decision as persuasive as to how the state supreme court might rule." *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996).

4

parties to the transaction, and . . . this duty goes beyond the contractual obligation to follow the parties' closing instructions." Pl.'s Resp. at 4.

The Court need not determine the potential scope, as an abstract matter, of a closing agent's fiduciary duties.  While First Franklin argues that a closing agent has duties that extend beyond the closing instructions, it does not allege that defendant breached any of those duties.  Its claim for breach of fiduciary duty simply alleges the same breaches that support its breach of contract claim.  Under Colorado's economic loss rule, the tort claim is therefore barred.

### A.  The Economic Loss Rule

In *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256 (Colo. 2000), the Colorado Supreme Court held "that a party suffering only economic loss from a breach of an express or implied contractual duty may not assert a tort claim for such breach absent an independent duty of care under tort law."  *Id.* at 1264.  The Colorado Supreme Court has identified "three main policy reasons" that support the application of the rule "between and among commercial parties . . .:  (1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort."  *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).

While the economic loss rule is most commonly applied to negligence claims, the Colorado Supreme Court does not limit the application of the rule in that way.[3]  Rather, courts must maintain the distinction between contract and tort law, which for purposes of the economic loss rule, requires identifying "the source of the duties of the parties." *Town of Alma*, 10 P.3d at 1262.  "Tort obligations generally arise from duties imposed by law," while "[i]n contrast, contract obligations arise from promises made between parties."  *Id.* ("'A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.'") (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995)).  When it comes to other torts, including breach of fiduciary duty, the analysis can be more complex, and the name of the rule can cause confusion.  *See id.* at 1263 ("[S]ome torts are expressly designed to remedy pure economic loss (e.g., professional negligence, fraud, and breach of fiduciary duty).  It is here that substantial confusion arises from the use of the term 'economic loss rule.'").  As the Colorado Supreme Court made clear, the focus should not be on the nature of the loss, i.e., whether it is economic, but rather on the source of the duty.  *Id.* at 1262 n.8 ("[W]e believe that a more accurate designation of what is commonly termed the 'economic loss rule' would be the 'independent duty rule.'").

---

[3]*See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, --- P.3d ----, 2009 WL 1152160, at *6 (Colo. App. April 30, 2009) ("The court in [*Town of Alma*] did not draw any bright lines among types of torts (e.g., fraud, negligence) that are always barred by the economic loss rule, those that may be barred, and those that are never barred.").

6

The Colorado Supreme Court has "recognized that some special relationships by their nature automatically trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Id*. at 1263 (citing cases involving the attorney-client relationship, the physician-patient relationship, and the "quasi-fiduciary nature of insurer-insured relationship").  The court has "also recognized that certain common law claims that sound in tort and are expressly designed to remedy economic loss *may* exist independent of a breach of contract claim." *Id.* (citing cases arising out of common law fraud and negligent misrepresentation) (emphasis added).  In order to avoid the application of the economic loss rule, one must not only identify an independent duty but must also be asserting a tort claim *based on* that independent duty.  Thus, a closing agent may owe independent tort duties that "arise . . . by law." *A.C. Excavating v. Yacht Club II Homeowners Assoc., Inc.*, 114 P.3d 862, 865-66 (Colo. 2005).  Where, however, the only allegation in the tort claim is the breach of "promises the parties have made to each other," *id.*, the claim sounds in contract.

### B.  Nature of the Third Claim for Relief

Plaintiff's third claim for relief largely consists of factual allegations contained in the general allegations that plaintiff incorporates by reference in its breach of contract claim as well.  These allegations focus on the closing instructions.  For example, the "Introduction" section of the Complaint states "First Franklin gave United Title specific instructions not to close the loan unless (1) the borrowers satisfied their closing obligation with cash from their own personal bank account, and (2) there would be no

senior liens on the property . . . ."  Compl. at 1, ¶ 1.  The general allegations state that

"First Franklin provided United Title with closing instructions for the Loan (the 'Closing

Instructions') that articulated United Title's duties as settlement and closing agent for

First Franklin."  *Id.* at 4, ¶ 12.  Moreover, the general allegations refer to the closing

instructions to describe the breach of United Title's duties: "In breach of the unequivocal

Closing Instructions, United Title caused First Franklin to fund the Loan on March 5,

2007 with clear knowledge of the Rosses' secondary financing . . . ."  *Id.* at 5, ¶ 17.  The

general allegations also describe causation in reference to the closing instructions:

"Had United Title obeyed the clear Closing Instructions, the Loan would not have been

funded, and First Franklin would not have suffered a loss."  *Id.* at 6, ¶ 22.  Thus, the

general allegations describe the source of United Title's duties in reference to the

closing instructions.

    The third claim for relief incorporates the general allegations and then simply

states:

> By virtue of United Title's role as settlement and closing agent for First
> Franklin, United Title was acting as a fiduciary for First Franklin with respect
> to the loan closing.
>
> United Title breached its fiduciary duty to First Franklin by funding the Loan
> despite clear knowledge of unauthorized secondary financing from Irwin
> Union Bank, and by drawing funds to close from the Irwin Union Bank loan
> rather than from the Rosses' deposit account.
>
> As a proximate result of United Title's breach of its duty, First Franklin
> sustained damages in the amount of $193,620.56.

Compl. at 8, ¶¶ 34-36.  First Franklin alleges a breach of fiduciary duty, but does not

allege additional facts regarding either the source of such a duty or the nature of the

breach.  Rather, First Franklin has defined the relevant duty in contractual terms.  *See Micale v. Bank One N.A. (Chicago)*, 382 F. Supp. 2d 1207, 1221 (D. Colo. 2005) ("[T]he nature of the obligations under the contract are the same as, or subsume the duties of care imposed by the common law.  Plaintiff's complaint alleges that the duties Defendants allegedly tortiously breached are the same duties Plaintiff claims Defendants breached under the contract."); *cf. Audiotext Communications Network, Inc. v. US Telecom, Inc.*, 912 F. Supp. 469, 474-75 (D. Kan. 1995) (barring a fiduciary duty claim pursuant to the economic loss rule where "[p]laintiffs have failed to allege and have not presented any evidence that the tortious conduct of defendants is independent of the breach" and "have failed to establish that they have suffered personal injury or property damage because of the alleged tortious conduct that is separate from the breach of contract damages").[4]

When parties choose to define their duties through a contract, courts look to whether the contract fully defines the duty allegedly breached or whether a distinct duty, independently recognized, exists.  For example, *Town of Alma* concluded that petitioners' negligence claim was based only upon contractual assumption of duties and, therefore, was barred.  *See Town of Alma*, 10 P.3d at 1264 ("These contractual provisions demonstrate that AZCO expressly assumed the duty to guarantee its quality of workmanship and its materials when it undertook to install the water system.  As

---

[4]*See Lehman Bros. Holdings, Inc. v. Hirota*, No. 8:06-cv-2030-T-24MSS, 2007 WL 1471690, at *3 (M.D. Fla. May 21, 2007) ("The Court concludes that Plaintiff's tort claims are substantively indistinguishable from its breach of contract claims, and therefore, are barred by the economic loss rule.").

such, Petitioners have failed to demonstrate that AZCO breached any duty independent of its contractual obligations."); *BRW*, 99 P.3d at 73-74 ("*Town of Alma* focused on the fact that the duty allegedly breached was contained in the contract.  Here, the duties allegedly breached were contained in the network of interrelated contracts, and the economic loss rule applies.").[5]  In *Williams Field Services Group LLC v. General Elec. Intern. Inc.*, No. 06-CV-0530-CVE-SAJ, 2008 WL 450374 (N.D. Okla. Feb. 15, 2008) (applying Colorado law), plaintiff claimed that defendants had a duty of care independent from the contract between the parties for defendants to refurbish certain turbines at a gas processing plant.  The court held that plaintiff  "fails to state how this purported separate, independent duty differs in any way from the duties set forth in the [parties' contract]."  *Id.* at *4 (citing *Grynberg v. AgriTech, Inc.*, 10 P.3d 1267, 1270 (Colo. 2000) ("Moreover, the [plaintiffs] fail to explain how a 'common law duty' would impose a different duty of care on [defendants] than that already provided for by contract.")).[6]

In *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146 (10th Cir. 2008), the Tenth Circuit, applying Colorado law, permitted a negligent

_____

[5]*Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1107 (Colo. App. 2004) ("The economic loss rule requires the court to focus on the contractual relationship between the parties, rather than their professional status, in determining the existence of an independent duty of care.  If the tort claims are based on duties that are imposed by contract, then contract law provides the remedies for economic losses.") (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004)).

[6]*Cf. Ben-Yishay v. Mastercraft Development, LLC*, 553 F. Supp. 2d 1360, 1370 (S.D. Fla. 2008) (barring a fraudulent inducement claim because "[e]ach of the allegedly fraudulent representations on which Plaintiffs allegedly relied are the same obligations memorialized in the agreement").

misrepresentation claim to proceed despite the existence of a contract between the parties.  The court distinguished *BRW*, where a negligent misrepresentation claim was barred by the economic loss rule, as follows:

> "If any work was not in conformance with the contract documents, BRW was required to make a 'verbal report of such nonconformance' followed by a written report."  Because the contract explicitly described one party's duty to communicate certain information to the other, the economic loss rule barred the negligent misrepresentation claim.  In other words, the duty of care in communicating information – on which the negligent misrepresentation tort is based – did not exist independently of the parties' contractual obligations in *BRW*.

*Id.* at 1163 (citations omitted).

Applying the same analysis here, i.e., examining the nature and source of the alleged duty, it is clear that First Franklin's tort claim is not supported by a duty independent of contractual obligations.  Rather, unlike in *Level 3*, First Franklin is "simply restating its breach of contract claim."[7]  *Id.* at 1162.  Therefore, the fiduciary duty claim is barred by the economic loss rule, regardless of whether closing agents might owe additional duties that could support separate causes of action under different circumstances.[8]

---

[7]*Cf. Davis v. Wells Fargo Home Mortgage*, No. 34136-1-II, 2007 WL 2039077, at *6 (Wash. App. Div. 2 July 17, 2007) ("The Davises' attempt to characterize their claims as tort claims does not defeat application of the economic loss rule.").  Essentially, First Franklin claims that the tort committed *was* the breach of the contract provisions. Compl. ¶ 35 ("United Title breached its fiduciary duty to First Franklin by funding the Loan despite clear knowledge of unauthorized secondary financing from Irwin Union Bank, and by drawing funds to close from the Irwin Union Bank loan rather than from the Rosses' deposit account.").

[8]Indeed, at least one Colorado court has put the analysis in sequential terms, concluding that it was not permitted to analyze the possible existence of an

The only basis for finding the economic loss rule not to apply here would be to conclude that the nature of any fiduciary duty owed by closing agents always permits bringing a tort action, regardless of what contractual duties may exist.  First Franklin argues that the "law on point in Colorado . . . is that a closing agent owes a duty to protect the rights of the parties to the transaction, and that this duty goes beyond the contractual obligation to follow the parties' closing instructions." Pl.'s Resp. at 4.  In support of this point, First Franklin relies on *White v. Brock*, 584 P.2d 1224 (Colo. App. 1978).  While the *White* court was unwilling to limit a closing agent's duty "to filling out the closing documents and carrying out the instructions of the parties," it did "agree that closing agents are not general agents, and that their duty is limited to matters directly related to the closing." *White*, 584 P.2d at 1228.  Concluding that "the closing was conducted in an irregular manner," the Court permitted plaintiff's breach of fiduciary duty claim to proceed against the closing agent.  *Id.*

First Franklin's reliance on *White*, however, is unavailing.  The case predates *Town of Alma* and does not, in any event, clearly raise the issue of potentially duplicative contract and tort claims.  There is no indication in *White* that the plaintiff,

---

independent duty if the contract governed the conduct at issue.  In *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1108 (Colo. App. 2004), the court acknowledged that there could be "an independent, well-recognized obligation imposed by tort law to refrain from intentional interference with a prospective business advantage. . . .  However, the existence of such a duty is not determinative, because we are directed first to determine whether the contract requires conformance to a particular standard before turning to an independent duty analysis. If a duty is found in the contract, as here, it is improper further to analyze the existence of an independent tort duty in determining whether an economic loss may be recovered." *Id.* at 1108 (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66).

who "was inexperienced in real estate transactions," *id.* at 1226, had entered into a contractual relationship with the closing agent and was attempting to recover in tort for contractual breaches.  Furthermore, that a closing agent may owe an independent "duty to protect adequately the rights of plaintiff," as First Franklin contends, Pl.'s Resp. at 4 (quoting *White*, 584 P.2d at 1228), is immaterial.  As held by the court in *Micale*, "assuming a fiduciary duty exists between the parties as a basis for Plaintiff's tort claims, it does not arise 'from an independent duty of care recognized under the common law *but not contemplated under the terms of the contract.*'"  382 F. Supp. 2d at 1221 (quoting *Grynberg,* 985 P.2d at 62) (emphasis added by *Micale* court).  Under the circumstances of this case, where the contract is "between and among commercial parties," *BRW*, 99 P.3d at 72, and the asserted tort action is alleging nothing more than a breach of the contractual terms, the Court finds that the economic loss rule as applied by the Colorado Supreme Court bars the tort action, regardless of what additional independent fiduciary duties closing agents may owe under different circumstances. Whether the contractual terms mark the outer boundary of all potential duties owed by United Title is immaterial, as they mark the outer boundary of First Franklin's claimed breach of fiduciary duty here.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion for partial summary judgment [Docket No. 36] is GRANTED.  It is further

**ORDERED** that plaintiff's second and third claims for relief are dismissed.


DATED November 5, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge